T.C. Memo. 2013-157

UNITED STATES TAX COURT

VIP'S INDUSTRIES INC. & SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18584-11.                    Filed June 24, 2013.

Gary S. Stirbis, for petitioner.

Nhi T. Luu, for respondent.

MEMORANDUM OPINION

MARVEL, Judge:  Respondent determined a deficiency in petitioner's

Federal income tax of $832,347 for petitioner's taxable year ending (TYE)

September 30, 2006.  The sole issue for decision is whether petitioner's exchange

of a leasehold interest with a term of 21 years and 4 months remaining for fee

**[*2]** interests in two real properties qualifies as a like-kind exchange under section 1031.[1]

### Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner is a corporation, and its principal place of business was in Oregon when it petitioned this Court.

I.   VIP's Industries, Inc. & Subsidiaries

During and before the year in issue VIP's Industries, Inc. (VIP's Industries) & Subsidiaries (collectively, petitioner) operated several wholly owned and majority-owned entities in the hotel, motel, restaurant, hospitality, and real estate industries.

VIP's Industries' wholly owned subsidiaries include, among others, the following subchapter C corporations: Phoenix Hotels, Inc., and VIP's Hotels, Inc. Before June 7, 2002, VIP's Hotels was named VIP's Motor Inns, Inc. Phoenix Hotels owns 100% of Inns Management, Inc., also a C corporation. Inns

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

[*3] Management and VIP's Hotels own 1% and 99%, respectively, of Phoenix Inns, LLC, a limited liability company that is treated as a partnership for tax purposes. Before March 30, 2006, Phoenix Inns operated motels under the brand name "Phoenix Inns Suites", with locations in South Salem, Lake Oswego, Eugene, Tigard, and Beaverton, Oregon, and in Vancouver, Washington.

II.     The Eugene Property and the Ground Lease

On December 3, 1993, VIP's Motor Inns executed a ground lease with respect to real property at 850 Franklin Boulevard, Eugene, Oregon (Eugene property), with Northwest Christian College. The ground lease was a nonrenewable and nonextendable lease with a term of 33 years from the lease commencement date. The lease commencement date was August 1, 1994.

The ground lease provided that the lessee would build and operate a motel facility with no fewer than 90 rooms on the Eugene property. Paragraph 12 of the ground lease provided that all improvements and appurtenances to, and all personal property placed upon, the Eugene property remained the property of the lessee until the expiration or sooner termination of the ground lease. Under the ground lease the lessee was responsible for the costs of all improvements made on the Eugene property. The ground lease was never amended.

**[*4]** By November 1994 VIP's Motor Inns had constructed a motel on the Eugene property at a cost of $2,509,398. VIP's Motor Inns, and its successor, Phoenix Inns, operated a motel under the brand name of Phoenix Inn Suites on the Eugene property until March 30, 2006. While operating the Phoenix Inn Suites motel, VIP's Motor Inns, and later Phoenix Inns, was responsible for all utility and operating expenses, personal and real property taxes, and casualty and liability insurance expenses for the Eugene property and the motel.

III.    Exchange of the Eugene Property

On March 30, 2006, petitioner, through Phoenix Inns, sold its leasehold interest in the Eugene property to a Wall Street investment firm and deposited the proceeds with a qualified intermediary (QI),[2] First American Exchange Co., LLC. The Wall Street firm established PIH Eugene, LLC to hold the leasehold interest in the Eugene property. When Phoenix Inns assigned its interests under the ground lease to PIH Eugene, LLC, a term of 21 years and 4 months remained under the ground lease.

---

[2]Pursuant to regulations issued under sec. 1031, a "qualified intermediary" with which the taxpayer has entered into an "exchange agreement" may be used to facilitate a nonsimultaneous exchange of property. See sec. 1.1031(k)-1(g)(4)(iii), Income Tax Regs.

**[*5]**   In exchange for its leasehold interest in the Eugene property, Phoenix Inns received $1,719,609 in cash, sustained sale expenses of $75,663, and was relieved of the balance of its existing loan on the Eugene property of $1,710,686.  On March 30, 2006, Phoenix Inns had an adjusted basis in its leasehold interest in the Eugene property of $2,103,719.  Phoenix Inns used the sale proceeds deposited with the QI to purchase fee interests in the following two real properties with a combined fair market value of $4,319,705:  (1) a property at 17993 SW Lower Boones Ferry Road, Tigard, Oregon (Bridgeport property), with an existing motel; and (2) a property at 210 Liberty Street, SE, Salem, Oregon (Salem property), with an existing office building.

On April 19, 2006, Phoenix Inns received a statutory warranty deed from Krishna Enterprises, LLC, for a fee interest in the Bridgeport property, and Phoenix Inns assumed a loan of $1.25 million on the Bridgeport property.  On June 23, 2006, petitioner received a statutory warranty deed from the Gwynn Building, LLC, for a fee interest in the Salem property.  After April 19 and June 23, 2006, Phoenix Inns held the Bridgeport property and the Salem property, respectively, for productive use in its trade or business.

Petitioner filed a consolidated Federal income tax return for its TYE September 30, 2006, on a Form 1120, U.S. Corporation Income Tax Return.

**[\*6]** Through Phoenix Inns, petitioner realized gain of $4,320,618 from the exchange of the leasehold interest in the Eugene property. On its consolidated return petitioner claimed that it recognized $2,104,632, and did not recognize the remaining $2,215,986, of the realized gain pursuant to section 1031.

On March 16, 2011, respondent issued to petitioner a notice of deficiency for its TYE September 30, 2006. In the notice of deficiency respondent determined that petitioner was required to recognize additional gain of $2,215,986 from the exchange of the leasehold interest in the Eugene property because the exchange did not qualify for nonrecognition under section 1031.

## Discussion

I. Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. Rules 122(b), 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, if a taxpayer produces credible evidence[3] with respect to any factual issue relevant to ascertaining the taxpayer's liability for any tax imposed by

---

[3]"Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness).'" Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

[*7] subtitle A or B of the Code and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner. Sec. 7491(a)(1). Section 7491(a)(2) requires a taxpayer to demonstrate that he (1) complied with requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) cooperated with reasonable requests by the Secretary[4] for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

The parties do not address the assignment of the burden of proof in the stipulations or on brief. However, because we decide this case on the preponderance of the evidence, the burden of proof is irrelevant. See Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), aff'g T.C. Memo. 2003-212; Knudsen v. Commissioner, 131 T.C. 185, 188-189 (2008).

II. Like-Kind Exchanges

Generally, gain or loss realized from the sale or exchange of property is recognized. Sec. 1001(c). Section 1031 provides, however, that no gain or loss is recognized on the exchange of property held for productive use in a trade or

---

[4]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

[*8] business or for investment if the property is exchanged solely for property of a like kind that is to be held either for productive use in a trade or business or for investment. Sec. 1031(a)(1). When money or unqualified property is received in an otherwise qualifying like-kind exchange, a taxpayer's realized gain is recognized to the extent of the sum of such money and the fair market value of such unqualified property. Sec. 1031(b); sec. 1.1031(a)-1(a)(2), Income Tax Regs.

The rationale for nonrecognition of gain or loss on the exchange of like-kind property is that the taxpayer's economic situation after the exchange is fundamentally the same as it was before the transaction occurred. See Jordan Marsh Co. v. Commissioner, 269 F.2d 453, 455-456 (2d Cir. 1959), rev'g T.C. Memo. 1957-237; Koch v. Commissioner, 71 T.C. 54, 63-64 (1978). As a House report explained: "[I]f the taxpayer's money is still tied up in the same kind of property as that in which it was originally invested, he is not allowed to compute and deduct his theoretical loss on the exchange, nor is he charged with a tax upon his theoretical profit." H.R. Rept. No. 73-704 (1934), 1939-1 C.B. (Part 2) 554, 564.

In determining whether property is exchanged for property of a like kind within the meaning of section 1031(a), we compare the exchanged properties to ascertain whether the nature and character of the transferred rights in and to the

[*9] respective properties are substantially alike.  Peabody Natural Res. Co. v. Commissioner, 126 T.C. 261, 273 (2006); Koch v. Commissioner, 71 T.C. at 65-70; sec. 1.1031(a)-1(b), Income Tax Regs.  In making this comparison, we consider the respective interests in the physical properties, the nature of the title conveyed, the rights of the parties, the duration of the interests, and any other factor bearing on the nature or character of the properties as distinguished from their grade or quality.  Peabody Natural Res. Co. v. Commissioner, 126 T.C. at 273; Koch v. Commissioner, 71 T.C. at 65-70; sec. 1.1031(a)-1(b), Income Tax Regs.

With respect to real property, section 1.1031(a)-1(c), Income Tax Regs., provides as follows:  "Examples of exchanges of property of a 'like kind.'--No gain or loss is recognized if * * * a taxpayer who is not a dealer in real estate exchanges city real estate for a ranch or farm, or exchanges a leasehold of a fee with 30 years or more to run for real estate, or exchanges improved real estate for unimproved real estate".  In the light of this regulation, "[w]e previously have indicated that a short-term leasehold of real property is not equivalent to a fee interest for purposes of * * * [section] 1031."  Peabody Natural Res. Co. v. Commissioner, 126 T.C. at 275 n.11 (citing Capri, Inc. v. Commissioner, 65 T.C. 162, 181-182 (1975), May Dep't Stores Co. v. Commissioner, 16 T.C. 547, 556

[*10] (1951), and Standard Envelope Mfg. Co. v. Commissioner, 15 T.C. 41, 48 (1950)). [T]his characterization of short-term leasehold interests derives not from any particular State law characterization but from negative implication of longstanding regulations which provide that an exchange of a 30-year lease for a fee interest qualifies as a like-kind exchange under * * * [section] 1031." Id. (citing Smalley v. Commissioner, 116 T.C. 450, 464 n.11 (2001)).

III.  Petitioner's Exchange of Its Leasehold Interest in the Eugene Property for Fee Interests in the Bridgeport and Salem Properties

The parties disagree (1) whether petitioner's leasehold interest in the Eugene property was of like kind to the fee interests in the Bridgeport and Salem properties; and (2) even if the leasehold interest in the Eugene property was not of like kind to the fee interests in the Bridgeport and Salem properties, whether petitioner's motel improvements on the Eugene property were of like kind to those fee interests.

A.  Whether the Leasehold Interest in the Eugene Property Was of Like Kind to the Fee Interests in the Bridgeport and Salem Properties

Petitioner contends that its leasehold interest in the Eugene property was of like kind to the fee interests in the Bridgeport and Salem properties because (1) section 1.1031(a)-1(c), Income Tax Regs., does not exclude all exchanges of leasehold interests in real property with terms of less than 30 years for fee interests

[*11] in real property from receiving like-kind exchange treatment but rather provides a safe harbor for exchanges of leaseholds with terms of 30 years or more for fee interests in real property; and (2) its leasehold interest in the Eugene property was of sufficient length to be considered of like kind to the fee interests in the Bridgeport and Salem properties.

Petitioner exchanged its leasehold interest in the Eugene property with a remaining term of 21 years and 4 months for fee interests in the Bridgeport and Salem properties. We previously have held that leasehold interests with similar or even longer terms than the one at issue here are not equivalent to fee interests. In May Dep't Stores Co. v. Commissioner, 16 T.C. at 556, we held that a 20-year leasehold was not equivalent to a fee interest. In Standard Envelope Mfg. Co. v. Commissioner, 15 T.C. at 48, we held that a leasehold interest with a term of 1 year and an option to renew for a term of 24 years was not equivalent to a fee interest, and we have held that options to renew are included in determining whether a leasehold interest is equivalent to a fee interest. See Peabody Natural Res. Co. v. Commissioner, 126 T.C. at 275; Century Elec. Co. v. Commissioner, 15 T.C. 581, 591-592 (1950), aff'd, 192 F.2d 155 (8th Cir. 1951).[5]

---

[5]Petitioner contends that May Dep't Stores Co. v. Commissioner, 16 T.C. 547 (1951), and Standard Envelope Mfg. Co. v. Commissioner, 15 T.C. 41 (1950),

(continued...)

**[*12]** Petitioner's leasehold interest in the Eugene property with a term of 21 years and 4 months remaining is closer in nature to the leasehold interests that we characterized as not equivalent to a fee interest, see May Dep't Stores Co. v. Commissioner, 16 T.C. at 556; Standard Envelope Mfg. Co. v. Commissioner, 15 T.C. at 48, than to the 30-year leasehold interest that section 1.1031(a)-1(c), Income Tax Regs., recognizes as the equivalent of a fee interest. Applying our precedent, we therefore conclude that petitioner's leasehold interest was not of like kind to a fee interest under section 1031.[6]

---

[5](...continued)
are distinguishable because they concern sale-leaseback transactions that may have been designed to achieve improper tax avoidance. However, these cases cannot be explained as targeting improper tax avoidance because they allowed, rather than disallowed, the respective taxpayers' claimed losses.

   Petitioner further contends that May Dep't Stores and Standard Envelope are distinguishable because the respective taxpayers intended for sec. 1031 not to apply and for their losses to be recognized. However, this contention also fails because the "[t]he rules of * * * [sec.] 1031 apply automatically; they are not elective." Koch v. Commissioner, 71 T.C. 54, 64 (1978).

   [6]In reaching this conclusion we note that a short-term real property interest is not of like kind with a long-term real property interest irrespective of whether the short-term real property interest is a real property interest under State law. See Peabody Natural Res. Co. v. Commissioner, 126 T.C. 261, 275 n.11 (2006) (citing Smalley v. Commissioner, 116 T.C. 450, 464 n.11 (2001)).

[*13] Because we decide this case in accordance with our existing precedent, we need not decide whether section 1.1031(a)-1(c), Income Tax Regs., mechanically excludes all exchanges of leaseholds with terms of less than 30 years for fee interests from receiving like-kind exchange treatment. Compare Peabody Natural Res. Co. v. Commissioner, 126 T.C. at 276 (referring to "the 30-year safe harbor provisions of section 1.1031(a)-1(c), Income Tax Regs."), with Capri, Inc. v. Commissioner, 65 T.C. at 181 ("section 1.1031(a)-1(c), Income Tax Regs., requires a lease of real property to be 30 years in duration to constitute an interest in real property equivalent to a fee interest"), and Standard Envelope Mfg. Co. v. Commissioner, 15 T.C. at 48 ("The lease was for a term of less than 30 years, and, therefore, was not the equivalent of a fee under the terms of * * * [the predecessor of section 1.1031(a)-1(c), Income Tax Regs.].").

B. Whether the Motel Improvements on the Eugene Property Were of Like Kind With the Bridgeport and Salem Properties

Petitioner contends that even if its leasehold in the Eugene property was not of like kind to the fee interests in the Bridgeport and Salem properties, the exchange also covered the motel improvements on the Eugene property and those

**[\*14]** improvements, which petitioner contends constituted 85% of the value of the property, were of like kind to the Bridgeport and Salem properties.[7]

Petitioner has introduced no evidence supporting its contention that the motel improvements constituted 85% of the value of the Eugene property. See Rules 122(b), 142(a)(1); Welch v. Helvering, 290 U.S. at 115. Moreover, the record shows that all of petitioner's improvements to the Eugene property would belong to the lessor upon expiration or sooner termination of the ground lease. As we have concluded that petitioner's leasehold interest in the Eugene property was a short-term real property interest, see supra pp. 10-13, we must likewise conclude that petitioner's interest in the motel improvements was a short-term real property interest, cf. Rev. Rul. 72-601, 1972-2 C.B. 467, 468 (life estate of less than 30 years not equivalent to fee interest), and was, therefore, not equivalent to a fee interest, see sec. 1.1031(a)-1(c), Income Tax Regs. Accordingly, petitioner's contention that its motel improvements on the Eugene property were of like kind to the fee interests in the Bridgeport and Salem properties is misplaced.

---

[7]Petitioner relies on Davis v. United States, 411 F. Supp. 964, 967 (D. Haw. 1976), aff'd on other grounds, 589 F.2d 446 (9th Cir. 1979), which held that improvements to real property are of like kind to real property under sec. 1033(g)(1). The Commissioner disagrees with Davis. See, e.g., Rev. Rul. 67-255, 1967-2 C.B. 270. Because we conclude that petitioner's argument fails, we need not decide whether we agree with Davis.

**[*15]** We have considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.