T.C. Memo. 2013-215

UNITED STATES TAX COURT

BRUCE E. PHILLIPS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21756-11.                    Filed September 10, 2013.

Bruce E. Phillips, pro se.

R. Jeffrey Knight, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  The Internal Revenue Service (IRS) determined a

deficiency of $3,437 in the 2008 Federal income tax of petitioner Bruce E.

Phillips.  The notice of deficiency disallowed the deductions that were claimed for

"other expenses" on Mr. Phillips' Schedule C, Profit or Loss From Business.  Mr.

[*2] Phillips filed a timely petition to this Court under section 6213(a) for redetermination of the deficiency.[1] At trial the IRS moved to amend its answer. The amendment would assert that all deductions Mr. Phillips claimed on his Schedule C should be disallowed (not just the deductions claimed for "other expenses") and that Mr. Phillips is liable for a 20% penalty under section 6662(a). The liability for the 20% penalty was not determined in the notice of deficiency. At issue are:

I.  Whether the IRS's motion to amend its answer should be granted.  We will grant the motion.

II.  Whether Mr. Phillips' bowling activities were engaged in for profit.  We hold that his bowling activities were not engaged in for profit.

III.  Whether, even if Mr. Phillips' bowling activities were engaged in for profit, he would be entitled to any of the deductions claimed on his Schedule C. We hold that he would not be so entitled.

IV.  Whether Mr. Phillips is liable for an accuracy-related penalty under section 6662(a).  We hold that he is liable for the penalty.

---

[1]All section references are to the Internal Revenue Code as in effect for 2008.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]                          FINDINGS OF FACT

Some facts have been stipulated, and they are so found.  Mr. Phillips was a resident of Maryland when he filed the petition.  He was a U.S. postal worker until he retired sometime after 2008.  Before 2004 he worked an evening shift.  In 2004 he was transferred to a sales and services associate position, which required him to work a day shift.  He was a day-shift worker during 2008, the year at issue.

Mr. Phillips is a self-taught bowler who began bowling in the early 1990s. His gross winnings over the years were:

| Year | Gross winnings |
|------|----------------|
| 2000 | $50,000 to $65,000 |
| 2001 | -0- |
| 2002 | 0 to 3,700 |
| 2003 | 13,000 |
| 2004 | 0 to 300 |
| 2005 | 0 to 300 |
| 2006 | -0- |
| 2007 | -0- |
| 2008 | -0- |

Mr. Phillips testified that he incurred approximately $30,000 in expenses from bowling yearly; we find that his annual expenses exceeded his gross winnings for each year after 2000.  Thus, he has not made a net profit from bowling since 2000.

[*4] After he changed jobs within the postal service in 2004, he was unable to devote as much time to bowling as before.

On his Form 1040, U.S. Individual Income Tax Return, for the year 2008 Phillips reported that he earned $67,171 in wages from his postal service position. Mr. Phillips attached a Schedule C, for the "business or profession" of "bowling". He reported that he earned no gross receipts from bowling and that he incurred $28,243 in expenses. The expenses were subdivided on his Schedule C as follows:

Other Expenses

| | |
|---|---|
| Fees | $18,200 |
| Telephone | 310 |
| Airline ticket | 250 |
| Toll | 25 |
| Subtotal | 18,785 |

Expenses

| | |
|---|---|
| Car and truck expenses | 5,311 |
| Rent or lease (vehicles, machinery, and equipment) | 530 |
| Travel, meals and entertainment | 3,617 |
|   Travel (2,665) | |
|   Deductible meals and entertainment (952) | |

| | |
|---|---|
| [*5] Subtotal | 9,458 |
| Total | 28,243 |

Mr. Phillips' tax-return preparer refused to sign the 2008 return because he was afraid of an audit.

On June 27, 2011, the IRS mailed Mr. Phillips a notice of deficiency disallowing Mr. Phillips' deduction for "other expenses" and determining a deficiency of $3,437. Mr. Phillips filed the petition on September 20, 2011. The IRS filed an answer on November 9, 2011. Neither the notice of deficiency nor the answer addressed the deductibility of the remaining $9,458 of the reported Schedule C expenses. These $9,458 of reported Schedule C expenses will be referred to as the "remaining expenses".

On April 12, 2012, the IRS sent Mr. Phillips a letter requesting documents establishing that Mr. Phillips was engaged in the trade or business of bowling in 2008 and that Mr. Phillips was entitled to the deductions he claimed on his Schedule C. The letter requested that Mr. Phillips mail these documents to the IRS by May 15, 2012.

On April 19, 2012, the parties spoke on the phone. Mr. Phillips stated that he would provide documents only to a Tax Court Judge. The IRS informed Mr.

**[\*6]** Phillips that it would seek to amend its answer to assert that all deductions claimed on his Schedule C should be disallowed.

On May 3, 2012, the IRS mailed a second letter requesting that Mr. Phillips mail the documents to the IRS by May 15, 2012. The letter reiterated that the IRS would seek to amend its answer to assert that all deductions claimed on his Schedule C should be disallowed. Mr. Phillips responded in a phone call and indicated that he would provide some bank statements to the IRS, but the IRS never received any bank statements.

On July 13, 2012, the IRS served on Mr. Phillips a formal request for production of documents pursuant to Rule 72, requesting that Mr. Phillips provide the documents described in the previous letters by August 16, 2013. The IRS did not receive a response from Mr. Phillips, and he did not provide any documents. The IRS moved on August 15, 2012, to compel production of the documents. On September 11, 2012 (shortly before the motion was granted), the parties met for Mr. Phillips to produce the documents to the IRS.

At the meeting Mr. Phillips provided seven pages from five statements from his PNC Bank account ending in 0965 for the year 2008. On each page Mr. Phillips placed checkmarks next to payments listed on the bank statements that he

**[\*7]** later testified were related to his "trying to make money". None of these checkmarks were obviously related to bowling expenses.

Mr. Phillips also provided the IRS with score sheets from amateur bowling tournaments in which he competed in 2005, flyers from organizations holding amateur bowling tournaments in 2012, and records from 2010-12, including hotel and casino invoices from Las Vegas, Nevada. None of these additional materials directly involve activities or expenses in the year at issue, 2008. The materials that Mr. Phillips produced to the IRS at the meeting (the seven pages of bank statements from 2008 and the score sheets, flyers, and invoices from other years) were received as evidence at trial.

At trial Mr. Phillips admitted that some of the checked line items on the seven pages of bank statements were not related to bowling. He was unable to point to any line items that were related to bowling. Mr. Phillips admitted that he did not create or keep any records (other than the seven pages of bank statements) related to any of the expenses reported on his Schedule C. He admitted that some of the reported expenses (both in the "other expenses" category and in the category of the remaining expenses) were for "personal business" and for

[*8] "gambling".[2] At the end of the trial the IRS moved to amend its answer to assert that all of Mr. Phillips' claimed Schedule C deductions should be disallowed and to assert that Mr. Phillips is liable for the accuracy-related penalty. The motion calculated that the deficiency is $5,800, the understatement is $5,800, the tax required to be shown on his return is $8,388, and the penalty is $1,160.

## OPINION

I.      Whether the IRS's Motion To Amend Its Answer Should Be Granted

The IRS moved to amend its answer to conform the pleadings to the evidence presented at trial. The amendment would assert an increased deficiency resulting from the disallowance of the deduction of the remaining expenses. The amendment to the answer would also assert that there is a substantial understatement of income tax and that Mr. Phillips is liable for the accuracy-related penalty on grounds of both substantial understatement of income tax and negligence. This Court has held on numerous occasions that it will not consider issues which have not been properly pleaded or otherwise preserved. Markwardt v. Commissioner, 64 T.C. 989, 997-998 (1975). Nevertheless, Rule 41(b) provides a procedure whereby in appropriate circumstances the pleadings may be

---

[2]We find to be true all facts that we describe in this paragraph as having been admitted by Mr. Phillips. Additionally, we find that Mr. Phillips created and kept no records regarding his 2008 bowling activities or bowling expenses.

**[\*9]** amended to conform to the evidence presented at trial. Rule 41(b) provides in part:

> (1) <u>Issues Tried by Consent</u>: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues, but failure to amend does not affect the result of the trial of these issues.
>
> (2) <u>Other Evidence</u>: If evidence is objected to at the trial on the ground that it is not within the issues raised by pleadings, then the Court may receive the evidence and at any time allow the pleadings to be amended to conform to the proof, and shall do so freely when justice so requires and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice such party in maintaining such party's position on the merits.[3]

This Court, in deciding whether an issue was tried by implied consent within the meaning of Rule 41(b)(1), has considered whether the consent results in unfair surprise or prejudice to the consenting party and prevents that party from presenting evidence that might have been introduced if the issued had been timely raised. <u>Bulas v. Commissioner</u>, T.C. Memo. 2011-201, slip op. at 2 n.2. When a party objects to the evidence relating to issues that the other party seeks to raise by

---

[3]Under sec. 6214(a), this Court has jurisdiction to consider a claim by the IRS for an increased deficiency, or an addition to tax, at any time before the entry of decision. <u>Henningsen v. Commissioner</u>, 243 F.2d 954, 959 (4th Cir. 1957), aff'g 26 T.C. 528 (1956); <u>Law v. Commissioner</u>, 84 T.C. 985, 989 (1985).

**[*10]** amending a pleading, Rule 41(b)(2) determines whether an amendment to a pleading should be allowed. See Rule 41(b)(2) ("[i]f evidence is objected to at the trial on the ground that it is not within the issues raised by the pleadings"). An amendment is to be allowed under Rule 41(b)(2) only if "justice so requires" and the objecting party fails to satisfy the Court that the amendment would "prejudice" such party in maintaining such party's position on the merits. Mr. Phillips is not a lawyer. He may not have understood the importance of objecting to the evidence at trial. However, even if Mr. Phillips had objected to the evidence, justice would require that the IRS be allowed to amend its answer; furthermore, Mr. Phillips' position would not be prejudiced by allowing the IRS to amend its answer.

Mr. Phillips was aware before trial that the IRS would seek a disallowance of the deductions he claimed for the remaining expenses. The IRS informed Mr. Phillips at various times (in a telephone conversation, in a letter dated May 3, 2012, and in its pretrial memorandum filed September 4, 2012) that it intended to seek permission from the Court to challenge the deductibility of the remaining expenses. At trial it was apparent from Mr. Phillips' testimony that he understood that the IRS intended to make such a challenge.

**[\*11]** At trial IRS counsel stated that Mr. Phillips had been informed before trial that the IRS would assert the penalty. Mr. Phillips admitted to us that he was aware that the IRS intended to assert the penalty. Mr. Phillips objected to the IRS's late assertion of the penalty because he claimed he was not told that the percentage of the penalty was 20%. However, he did not claim that he would have prepared for trial differently had he known the percentage.

Mr. Phillips knew that the IRS planned to assert the disallowance of the remaining expenses and that it would assert that he was liable for the penalty. He was on notice and had ample opportunity to plan a defense. Mr. Phillips would not be prejudiced by our allowing the IRS to amend its answer. We will grant the IRS's motion.

II.    Whether Mr. Phillips Had a Profit Motive for His Bowling Activities

A.    Burden of Proof

The IRS contends that Mr. Phillips did not have a profit motive for his bowling activities. As explained below, the expenses of his bowling activities are deductible only if he had a profit motive. See infra part II.B.

Generally, the taxpayer has the burden of proving that the IRS's determinations in the notice of deficiency are incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). As explained below, a preponderance of the

[*12] evidence demonstrates that Mr. Phillips did not have a profit motive for his bowling activities. We therefore need not determine whether the burden of proof is imposed on the IRS or on Mr. Phillips regarding whether he had a profit motive. Knudsen v. Commissioner, 131 T.C. 185, 189 (2008); FRGC Inv., LLC v. Commissioner, 89 Fed. Appx. 656 (9th Cir. 2004) (stating that the court was not required to determine who had the burden of proof when the preponderance of the evidence favored the IRS), aff'g T.C. Memo. 2002-276.

B.    Profit Motive

Section 183(a) provides that if an individual taxpayer is engaged in "an activity not engaged in for profit", no deductions are allowable for the expenses of the activity except to the extent allowed by section 183(b)(1) and (2). If Mr. Phillips' bowling activities were not engaged in for profit within the meaning of section 183(a), then none of his bowling expenses would be deductible, even taking into account the provisions of section 183(b)(1) and (2).[4]  Section 183(c)

_____

[4]Sec. 183(b)(1) allows certain types of deductions for which a profit motive is not required. All of Mr. Phillips' bowling deductions are the type that require a profit motive. See secs. 162, 183(c). Thus, no deductions are allowed under sec. 183(b)(1).

Sec. 183(b)(2) allows deductions that would be allowable if the activity were engaged in for profit to the extent that the gross income from the activity exceeds the deductions allowable pursuant to sec. 183(b)(1). Mr. Phillips earned no gross income from his bowling activities. Thus, no deductions are allowed

(continued...)

**[\*13]** defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." An activity constitutes a "trade or business" within the meaning of section 162--and it escapes the limitation of section 183--if the taxpayer's actual and honest objective is to make a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without opinion, 702 F.2d 1205 (D.C. Cir. 1983).

Courts determine whether an activity is engaged in for profit by examining all the facts and circumstances. Sec. 1.183-2(a), Income Tax Regs.; see also Hendricks v. Commissioner, 32 F.3d 94, 97-98 (4th Cir. 1994), aff'g T.C. Memo. 1993-396.[5] The taxpayer must have a good-faith profit motive but need not have a reasonable expectation of profit. Sec. 1.183-2(a), Income Tax Regs.; see also Hendricks v. Commissioner, 32 F.3d at 97-98; Dreicer v. Commissioner, 78 T.C.

_____

[4](...continued)
under sec. 183(b)(2).

[5]Under sec. 183(d), an activity is presumed to be engaged in for profit if, over the five consecutive years ending with the year at issue, gross income is derived from the activity for three or more of the years. The five consecutive years ending with 2008 are 2004, 2005, 2006, 2007, and 2008. The preponderance of the evidence shows that Mr. Phillips had zero gross winnings in at least three of the years (2006, 2007, and 2008). Therefore, Mr. Phillips' bowling activities are not presumed to be engaged in for profit under sec. 183(d).

**[*14]** at 645.  In determining profit motive, "greater weight is given to objective facts than to the taxpayer's mere statement of his intent."  Sec. 1.183-2(a), Income Tax Regs.; see also Hendricks v. Commissioner, 32 F.3d at 98.

Section 1.183-2(b), Income Tax Regs., provides nine factors to consider when determining whether an activity is engaged in for profit:  (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.[6]  See, e.g., Hendricks v. Commissioner, 32 F.3d at 98.

### 1.  Manner in Which the Taxpayer Carries On Activity

Factors indicating a profit motive include:  acting in a "businesslike manner and maintain[ing] accurate books and records", conducting the activity "in a manner substantially similar" to profitable activities of a similar nature, and

---

[6]These factors are not exclusive, and no one factor is dispositive.  Sec. 1.183-2(b), Income Tax Regs.; Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), aff'g T.C Memo. 1993-396.

[*15] attempting to improve the activity's profitability by adopting new operating methods and techniques and abandoning unprofitable methods. Sec. 1.183-2(b)(1), Income Tax Regs.

Mr. Phillips did not conduct his bowling activities in a businesslike manner. He maintained no books or records, much less accurate ones, and did not make any significant attempts to improve his cashflow from bowling.

Although he did win bowling tournaments in 2000 and 2003, by 2008 he had not won a tournament in three years. Despite this long losing streak, Mr. Phillips did nothing to change his approach to the game; he did not hire a coach, conduct additional research,[7] or attempt to change his technique. Additionally, in his testimony he could not identify a single tournament in which he had participated in 2008. Mr. Phillips did not carry on his bowling activities in a businesslike manner. Thus, this factor weighs against him.

### 2. Expertise of the Taxpayer or His Advisors

Profit motive may be shown if the taxpayer extensively studied the accepted practices regarding an activity or consulted with experts in such practices. Sec. 1.183-2(b)(2), Income Tax Regs.

---

[7]He had read a book about bowling when he first began bowling 20 years ago.

**[\*16]**  Mr. Phillips, however, did not seek to gain expertise through extensive study or consultation.  He did not hire a coach or seek other means of gaining expertise.  Although he did meet with some success early in his participation, he had had no success in recent years.  While success is not necessarily indicative of expertise, it is one significant way to gauge Mr. Phillips' level of expertise.  Of course, over the years, Mr. Phillips surely acquired some hands-on experience; however, he did not testify that he attempted to acquire additional knowledge of bowling in an attempt to make a profit.  This factor weighs against Mr. Phillips.

3.    Time and Effort

The amount of time and effort devoted to an activity may indicate a profit motive, particularly if the activity does not include substantial recreational aspects.  Sec. 1.183-2(b)(3), Income Tax Regs.

The evidence indicates that Mr. Phillips spent minimal time participating in bowling activities during 2008.  He testified about his bowling activities in 2008, but tellingly, he was unable to identify the tournaments in which he allegedly participated.  He did not indicate how often he practiced, but noted that he practiced less after his postal service shift changed beginning in 2004, four years before the year at issue.  Furthermore, he derived only recreational benefit from

**[\*17]** his bowling activities. This time-and-effort factor weighs heavily against Mr. Phillips.

### 4. Expectation of Assets' Appreciating in Value

This factor is neutral and is not applicable in this case, as bowling does not involve holding appreciating assets.

### 5. Success in Carrying On Other Activities

Previous experience in similar activities and successful conversion of unprofitable to profitable enterprises may indicate a profit motive. Sec. 1.183-2(b)(5), Income Tax Regs. Mr. Phillips did not testify that he successfully carried on any business activity. We conclude that this factor weighs against him.

### 6. History of Income or Losses

A series of years of net income would be a strong indication that the activity is engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. To sustain continued losses, however, may indicate a lack of profit motive. Id.

Mr. Phillips had a net profit in 2000, when he won cash prizes of $50,000 to $65,000. Although he had winnings of $13,000 in 2003, bowling was not profitable that year. Mr. Phillips claims he incurred approximately $30,000 in expenses for the year (which would have exceeded $13,000 in expenses). But even if his 2003 expenses were only $13,000, that would mean he earned zero for

[*18] the year and that bowling was not profitable for seven straight years leading up to, and including, the year at issue, 2008. Even though there was evidence that Mr. Phillips bowled in years before and after 2008, this does not mean that the purpose of his bowling was profit. See supra p. 3.

Mr. Phillips argued that the 2008 recession impaired his ability to make a profit. His failure to profit from bowling for seven straight years, however, erodes his argument that the 2008 recession was responsible for his lack of profitability. His long history of losses does not support the finding of a profit motive. Thus, this factor weighs against Mr. Phillips.

### 7.   Amount of Occasional Profits, If Any

The amount of profits earned in relation to the amount of losses incurred and the amount of the investment may indicate a profit motive. Sec. 1.183-2(b)(7), Income Tax Regs. Earning of substantial profits, even if the profits are sporadic, generally indicates a profit motive if the taxpayer's investment or losses are relatively small. Id. The mere opportunity to earn a substantial profit may also indicate a profit motive. Id. In contrast, an occasional small profit generally indicates a lack of profit motive if the taxpayer's investment or losses are relatively large. Id.

**[*19]** Mr. Phillips earned substantial profits in only one year while claiming to invest nearly half of his postal service salary in his bowling activities.[8] While the opportunity to earn substantial profit can be indicative of a profit motive, id., the Court has not been persuaded, particularly given Mr. Phillips' history of losses, reduced efforts since 2004, and lack of attempts to improve his profitability, that Mr. Phillips' bowling activities provided him a reasonable chance to make a profit before or after 2008. Furthermore, his occasional small profit compared to his investment weighs against a finding of a profit motive. This factor weighs against Mr. Phillips.

### 8. Financial Status of the Taxpayer

Having substantial income from other sources may indicate that the activity is not engaged in for profit, especially where losses from the activity generate substantial tax benefits or where there are recreational elements involved. Sec. 1.183-2(b)(8), Income Tax Regs.

During the year at issue Mr. Phillips earned more than $67,000 as a postal worker. Combined with the recreational nature of his bowling activities and the substantial deductions he claimed from them, this fact weighs against Mr. Phillips.

---

[8]Mr. Phillips testified that only some of the expenses he attributed to bowling were related to bowling, and that many were, in fact, a result of personal recreation and gambling.

[*20]     9.     Elements of Personal Pleasure or Recreation

The presence of personal or recreational elements in an activity may indicate the absence of a profit motive. Sec. 1.183-2(b)(9), Income Tax Regs. The mere presence of a personal or recreational aspect, however, does not necessarily preclude a profit motive. Id.

Mr. Phillips' bowling activities undoubtedly included a personal recreational element. Mr. Phillips' continuation of his bowling activities for nearly 20 years despite a failure to systematically profit from the activities indicates that his bowling activities were a hobby. If bowling was not a recreational activity, Mr. Phillips would not have continued to participate given the lack of revenue. This factor weighs against Mr. Phillips.

C.     Conclusion: Weighing the Factors

None of the factors weigh towards the existence of a profit motive, and all relevant factors weigh against the existence of a profit motive. Mr. Phillips earned a profit in only one tax year. He did not conduct the activities in a businesslike manner or make an effort to increase the profitability of his bowling activities. He decreased the amount of time and effort he expended in 2004 after changing shifts at his primary place of employment where he earned a substantial income. We

**[*21]** therefore conclude that Mr. Phillips did not engage in his bowling activities for profit.

III.  Whether Mr. Phillips Would Be Entitled to Any of the Schedule C Deductions

If, contrary to our finding supra part II,[9] Mr. Phillips had a profit motive for his bowling activities, then he may have been carrying on a trade or business.[10]  If he was, he could deduct the ordinary and necessary expenses of bowling. However, as explained below, he would not be entitled to any of the deductions claimed on his Schedule C.

A.  "Other Expenses" Deductions

The taxpayer generally has the burden of proving that the determinations in the notice of deficiency are incorrect.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The IRS determined in the notice of deficiency that Mr. Phillips was not entitled to the deductions for "other expenses".  Mr. Phillips does

[9]Our holding that there was no profit motive for Mr. Phillips' bowling activities means that Mr. Phillips was not carrying on a trade or business.  See Carol Duane Olson, "Toward a Neutral Definition of 'Trade or Business' in the Internal Revenue Code", 54 U. Cinn. L. Rev. 1199, 1210 (1985-86) ("I.R.C. section 183 only applies when the activity is not a 'trade or business' in the first place[.]").

[10]Alternatively, he could have been engaged in "the production or collection of income", in which case he could deduct the ordinary and necessary expenses of these activities under sec. 212(1).

**[*22]** not meet the requirements of section 7491(a) for shifting the burden of proof to the IRS since, as discussed below, he failed to produce credible evidence, substantiate his deductions, and maintain adequate records. Thus, the burden remains on Mr. Phillips to establish that he is entitled to the deductions he claimed on his Schedule C as "other expenses". See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business. An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business. See Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is "appropriate and helpful" in the taxpayer's business, but it need not be absolutely essential. Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (citing Welch v. Helvering, 290 U.S. at 113). Whether an expense is deductible under section 162 is a question of fact to be decided by this Court on the basis of all the relevant facts and circumstances. Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the IRS to determine the correct tax liability. Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999). For

**[\*23]** some types of expenses, lack of substantiation can be overcome. Under the

<u>Cohan</u> doctrine, if a taxpayer establishes that a deductible expense has been paid

but cannot establish the precise amount of the deductible expense, the Court may

estimate the amount. <u>See</u> <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir.

1930).[11] In making the estimate, the Court bears heavily against the taxpayer who

failed to more precisely substantiate the expense. <u>See</u> <u>id.</u> at 544. The Court will

not estimate a deductible expense unless the taxpayer presents a sufficient

evidentiary basis on which an estimate can be made. <u>See</u> <u>Vanicek v.</u>

<u>Commissioner</u>, 85 T.C. 731, 742-743 (1985). No estimate can be made of

expenses governed by the strict substantiation requirements of section 274. Sec

274(d).

The only documentary evidence from the year at issue that Mr. Phillips

provided to support his expenses was seven pages from five bank statements from

2008 on which he placed checkmarks next to payments that pertained to his

"trying to make money."[12] It is not apparent from the bank statements that any of

---

[11]The <u>Cohan</u> doctrine is generally recognized by the U.S. Court of Appeals
for the Fourth Circuit, to which this case could be appealed. <u>See</u> <u>Pridgen v. IRS</u>, 2
Fed. Appx. 264, 274 (4th Cir. 2001), <u>aff'g</u> T.C. Memo. 1999-188; <u>Gatling v.</u>
<u>Commissioner</u>, 286 F.2d 139, 144 (4th Cir. 1961), <u>aff'g</u> T.C. Memo. 1959-224.

[12]Mr. Phillips also introduced into evidence a number of documents from

(continued...)

[*24] the payments indicated with checkmarks were associated with bowling; most were ATM withdrawals or purchases made with Mr. Phillips' check card. For instance, on the statement dated January 19 through February 19, 2008, Mr. Phillips made 15 checkmarks for payments over a five-day period. Nine were for ATM withdrawals in Atlantic City, New Jersey, totaling $1,604. The withdrawals are simply labeled "ATM Withdrawal Park Pl & Boardwlk," and for each one the statement shows the amount withdrawn and the date of the transaction. The remaining six checkmarks on the January 19, 2008 statement were for check card purchases of unspecified goods or services from Bally's Hotel or Trump Plaza Hotel and totaled $2,069. Without more evidence, we cannot tell whether these withdrawals and purchases were related to Mr. Phillips' bowling activities.[13] At trial each time Mr. Phillips was asked to identify specific expenses related to bowling, he responded by referring to the bank statements in a general way but never directed the Court's attention to any specific transactions. As explained

---

[12](...continued)
years not at issue. See supra pp. 6-7. The bowling schedules were not specific to Mr. Phillips' involvement, and the hotel receipt made no mention of bowling. They thus do not support that he incurred bowling expenses during the year at issue.

[13]The remaining four bank statements included similar charges ranging from $200 to $2,520 in total ATM withdrawals and $315 to $2,067 in total check card purchases.

[*25] below, the lack of documentary evidence for "other expenses", combined with the noncompelling nature of Mr. Phillips' testimony, leads to the conclusion that he cannot deduct any of the "other expenses". We discuss each of the subcategories of "other expenses" in turn: (1) the $18,000 in bowling tournament fees, (2) the $310 in telephone expenses, and (3) the $250 in airfare and $25 in tolls.

### 1. Bowling Tournament Fees

Mr. Phillips provided no documentary evidence supporting any portion of the $18,200 deducted for bowling fees. He was unable to name any tournaments or provide the number of tournaments in which he participated in 2008 and did not testify how much he paid to enter any tournaments. There is no basis in the record for estimating the amount Mr. Phillips spent on bowling fees during 2008. See Vanicek v. Commissioner, 85 T.C. at 274.

### 2. Telephone Expenses

Mr. Phillips did not provide any evidence supporting the $310 in telephone expenses. At no point during his testimony did Mr. Phillips discuss his telephone expenses or indicate that any telephone expenses were related to bowling. It is

[*26] unclear whether the expenses correspond to a cellular phone or a landline.[14]
There is no basis in the record for estimating the amount Mr. Phillips spent on
telephone expenses for his bowling activities during 2008. See id.

### 3. Airfare and Toll Expenses

The airfare and toll expenses are travel expenses and are subject to strict
substantiation requirements under section 274(d) in addition to the requirements of
section 162(a). Section 274(d) imposes strict substantiation requirements for
certain expenses, including expenses for travel, meals, and entertainment. No
deduction is allowed for travel, meal, or entertainment expenses unless the
taxpayer "substantiates by adequate records or by sufficient evidence
corroborating the taxpayer's own statement": (1) the amount of the expense; (2)
the time and place of the travel, meal, or entertainment; and (3) the business
purpose of the expense. Sec. 274(d). Mr. Phillips kept no records beyond his
bank statements. Nothing in the trial record indicates the amount, time and place,

---

[14]If the telephone expense relates to a cellular telephone, it is subject to the
strict substantiation requirements of sec. 274(d) because cellular phones are listed
property in sec. 280F(d)(4)(A)(v). Mr. Phillips did not substantiate the date, time,
and business purpose of any use of the telephone. If the telephone expense relates
to a landline, it is subject to sec. 262(b), which disallows deductions for the first
telephone line. Mr. Phillips provided no evidence that the line was not his only
landline. Thus, he would not be eligible to claim a deduction for this expense on
his Schedule C.

**[\*27]** or business purposes of his airfare and toll expenses. Furthermore, he did not discuss tolls in his testimony. Mr. Phillips testified that he flew to New Orleans in 2008 but that the trip was not related to his bowling activities. Mr. Phillips also mentioned flights to Vicksburg and Jackson but did not provide any receipts for the trips; nor did he indicate that these trips were related to bowling. Mr. Phillips did not maintain records as required by section 6001 and did not meet the strict substantiation requirements of section 274(d).

B.      Whether Mr. Phillips Is Entitled to Any of the Remaining Schedule C Deductions

The IRS contends that Mr. Phillips is not entitled to any of the remaining Schedule C deductions, which consist of: $5,311 in car and truck expenses, $3,617 in travel, meals, and entertainment expenses, and $530 in rent or lease expenses. The IRS concedes that it bears the burden of proof on these issues because Rule 142(a)(1) shifts the burden to the IRS in respect to "any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer".

The IRS has met its burden of proof in respect to all of the remaining Schedule C deductions by showing that Mr. Phillips did not meet the strict substantiation requirements of section 274(d) for any of the expenses.

**[\*28]** Cars and trucks are included as listed property under section 280F(d)(4) and expenses therefore are subject to strict substantiation requirements under section 274(d). Mr. Phillips testified that he never created or maintained any records such as a mileage log, a planner, or other documentary evidence that would substantiate his car and truck expenses despite checking a box on his return indicating that he had written evidence of the business use of his vehicle. Mr. Phillips did not keep or maintain records detailing the amount of the expense, the time and place of travel, and the business purpose of each use of his vehicle as required by section 274(d). The IRS met its burden of proof by showing that Mr. Phillips did not keep the necessary records to strictly substantiate his car and truck expenses.

Mr. Phillips' travel, meal, and entertainment expenses are likewise subject to the strict substantiation requirements of section 274(d). Mr. Phillips admitted that he did not keep any receipts, logs, or other records to substantiate these expenses. He failed to record the amount of the expense, the time and place of the expense, the business purpose, and the business relationship of any persons entertained at any event. The IRS met its burden by showing that Mr. Phillips did not keep the necessary records to strictly substantiate his travel, meal, and entertainment expenses.

**[\*29]** In regard to the rent or lease expenses, Mr. Phillips testified that his claimed expense in this category was for renting a car while traveling. This expense is also subject to the strict substantiation requirements of section 274(d) because it is a travel expense and because a car is listed property under section 280(F)(d)(4). Mr. Phillips was not able to identify the date on which he rented a vehicle or point to a transaction on his bank statements that would indicate a rental vehicle charge. Mr. Phillips testified that he rented a car during a trip to New Orleans, but later admitted his trip to New Orleans was not related to his bowling activities. Nothing in the record indicates any vehicle rentals were related to Mr. Phillips' bowling activities. The IRS met its burden by showing that Mr. Phillips' claimed rent or lease expenses were not associated with bowling and that he did not keep the records necessary to meet the strict substantiation requirements.

IV.   <u>Whether Mr. Phillips Is Liable for an Accuracy-Related Penalty Under Section 6662(a) for 2008</u>

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of any underpayment attributable to (1) a substantial understatement of income tax or (2) negligence or disregard of rules or regulations.

Generally, an "understatement" is the excess of the tax required to be shown on the return over the tax shown on the return. Sec. 6662(d)(2)(A); sec.

**[\*30]** 1.6662-4(b)(2), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

Negligence is "a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances." Bunney v. Commissioner, 114 T.C. 259, 266 (2000); see Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence also includes any failure to maintain adequate books and records or failure to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

An exception to the accuracy-related penalty applies to any part of an underpayment for which the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). Whether the taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, considering all relevant facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Under section 7491(c), the IRS has the burden of production for penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The IRS also concedes that it has the burden of persuasion for the section 6662 penalty in this case.

The underpayment is due to a substantial understatement of income tax. There is an understatement of $5,800, which is more than $5,000, and is also more

[*31] than 10% of the tax required to be shown on the return for 2008 (i.e., 10% of $8,388). Therefore, it is a substantial understatement.

The underpayment is also due to negligence. Mr. Phillips was negligent in claiming business expenses for his bowling activities. He made no effort to comply with the Federal income tax laws. He did not maintain any records. He admitted that at least some of his reported expenses were related to bowling. He was unable to point to expenses related to bowling. He provided no evidence to substantiate any of his claimed expenses.

Mr. Phillips is not eligible for the good-faith exception of section 6664(c). Mr. Phillips credibly testified that he went to a tax return preparer for his 2008 return, but that he provided the preparer with only the seven pages from bank statements that he provided to the IRS and introduced at trial. The preparer refused to sign the return because he was afraid of an audit. A reasonable and prudent person would not have disregarded a tax return preparer's warnings without making at least a minimal effort to ensure there was some legal basis for doing so.

Mr. Phillips' underpayment was due to a substantial understatement of income tax and to negligence. Therefore, Mr. Phillips is liable for a 20% accuracy-related penalty under section 6662. The amount of the penalty is $1,160.

**[*32]** We have considered all arguments the parties have made, and to the extent that we have not addressed them, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered for respondent</u>.